## STEVENS *v.* MERRILL.

An officer who has made an arrest for debt, on a writ on which is indorsed the affidavit required by statute, and has, at the debtor's request, carried him before two justices of the peace to enable him to apply to them for a discharge, is not liable to the justices for their fees.

ASSUMPSIT, to recover the plaintiff's fees as a justice of the peace. The defendant, as deputy sheriff, arrested three debtors upon an execution, on which was indorsed an affidavit that they concealed their property, and at

their request carried them before two justices of the peace and quorum, of whom the plaintiff was one, in order that they might be discharged; the creditor objecting. The debtors filed their affidavits, denying the allegations of that on the back of the execution, and were required to answer numerous interrogatories of the creditor, occupying several days. Two of the debtors were then discharged, and the justices refused to discharge the other, who then furnished a jail bond. The plaintiff's claim is for pay for his services on this examination.

*Stevens, pro se,* and *Minot & Mugridge,* for the plaintiff.

*Marshall,* for the defendant.

BELL, C. J. By the statute as to arrests, it is provided that no person shall be liable to arrest, unless the plaintiff, or some person in his behalf, shall make an affidavit before a justice, on the back of such writ, that in his belief the defendant is justly indebted to him in a certain sum exceeding $13.33, and that he conceals his property so that no attachment or levy can be made, or that there is good reason to believe that he is about to leave the State to avoid the payment of his debts. Rev. Stat., ch. 185, sec. 8, and Stat. of 1843, ch. 35.

It is then provided, that in such case the defendant, when arrested, may require the officer making the arrest to carry him before two justices, one of whom shall be of the quorum; and such justices, upon considering his affidavit and such evidence as may be laid before them, if they believe he does not so conceal his property, and has no intention to leave the State, may make an order for his discharge upon the writ, and he shall be released. Rev. Stat., ch. 185, sec. 9.

On the part of the plaintiff it is contended, that, upon request made to the officer by the debtor, there is an im-

perative and peremptory obligation imposed upon him, connected with the service of the process and in furtherance of the same, which he is bound to regard; and the taking before the justice is as much a part of the service of the writ, as the making of the arrest; and any proper expense connected with the same is as much to be borne by him, as any charge for any other service in the execution of the process,—as, for instance, the board of the debtor during the examination.

On the other side it is contended, that although the officer is bound to take the debtor before two justices, upon his request, for that purpose, yet, when he has done that, his duty is discharged, the intent of the statute is carried out, and the magistrates then have the right to refuse to act, unless their fees are paid; and it is for the debtor, when he is brought before the justices, to lay his case before them; and the officer and the creditor have nothing to do except to await their decision, unless the creditor chooses to oppose the application.

The last of these seems to us the true view of the case. The object of the statute was, to secure to any person arrested for debt an immediate hearing before a suitable tribunal, upon the question whether he was really liable to arrest on the ground stated in the creditor's affidavit.

In most cases, where a right is given to a party to apply to magistrates or to a court for relief, no special provision is required, because the party is at liberty; but in this case, the debtor being under arrest, and it being the general duty of the officer to commit, if bail or sureties were not offered, he had no power to apply to two justices without the consent or concurrent action of the officer. The residences of the justices might be remote, and not upon the road to the jail; and the duty was, therefore, necessarily imposed upon the officer to go with the party arrested before the justices, to enable him to apply to them.

The only object of the provision seems to us to be, to

afford the debtor a reasonable opportunity to apply to the justices and obtain a hearing. The rules of construction of statutes require, that while every word of an enactment has its due and just force and effect given to it, yet the language is not to be extended beyond its natural effect; and the rights and duties of parties are not to be affected in any other respects than those provided by the statute, unless it is necessary to imply something more to give the statute effect. It is not to be assumed, without necessity, that the legislature have not made, in terms, all the change they intended to make. It would have been easy, if they so intended, to introduce an express provision imposing upon the officer making an arrest, the duty of making an application to the justices for the release of the prisoner, of defraying the expense of his witnesses and paying the fees of the justices, and giving him the right to charge the expenses thus incurred to the plaintiff, or any of those things; but they have not done so.

It does not seem to us that it can be justly inferred that the legislature intended that the officer should pay the justices their fees. The relation of the officer to the creditor imposes on him certain duties, all of which have reference to the objects and purposes of the latter in the enforcement of his rights. So far as the law imposes a duty on the officer for the benefit of the creditor, the law reasonably implies a contract to pay him for his services and expenses properly incurred for his advantage; but here the law imposes upon the officer a duty, not for the benefit of the creditor, but for the exclusive advantage of the debtor, which is not to be done at the request of the creditor, but generally, as in this case, against his wish.

There is no case, so far as we are aware, where the cost of any proceedings for the relief of a debtor under imprisonment is at the charge of the creditor, though they obviously stand on the same principle. Such are the cases of applications to the court for a discharge on an arrest on

Stevens v. Merrill.

mesne process, and to justices to take the poor debtor's oath. In these cases, if the debtor is unable or unwilling to pay the fees of the officers of the court, or of the magistrates, he can entitle himself to no relief; and it seems to us no more reasonable to subject the creditor to the payment of such expenses in this than in those cases.

In the argument for the plaintiff it is assumed that the sheriff selects the justices, engages their services, and employs them; but that is not our understanding of the case. He is bound to carry the debtor before the nearest justices who will attend to the business; and he would be liable for the wrong if he should carry the prisoner before a distant justice, when others can be found at a reasonable distance. He is required to find two justices, and give the debtor opportunity to make his application to them, and there his duty ends. The debtor, upon being brought before the justices, is bound to make his own application; and an essential part of every application is, to pay the fees when he calls for the service; public officers generally being under no obligation to act till their fees are paid.

It is said a debtor may be poor, and in consequence unable to obtain the relief designed. In that respect it is but the common case of legal proceedings which the law provides to be compensated by fees; those who cannot pay the fees cannot have the service. If that was a good reason for the legislature to provide for a gratuitous service, or for payment of the fees by the creditor or the county, it seems no reason for charging the officer.

*Judgment for the defendant.*

After the delivery by the Chief Justice of the judgment of the majority of the court, the following dissenting opinion was read:

FOWLER, J.* By the provisions of the statutes of this State, no person can be lawfully arrested upon any writ or execution founded upon a contract made since March 1, 1841, unless the plaintiff, or some person in his behalf, shall make an affidavit on the back of such writ or execution, that in his belief the defendant is justly indebted to him, upon the cause of action therein set forth, in a sum exceeding $13.33, and conceals his property so that no attachment or levy thereof can be made, or is about to leave the State to avoid the payment of his debts; and whenever any debtor is thus arrested he may require the officer making the arrest to carry him before two disinterested and impartial justices, to be selected by the officer, one of whom shall be of the quorum; and such justices, if, upon the evidence laid before them, they are satisfied the allegations of the affidavit are not true, are required to make an order upon the writ or execution for the discharge of the debtor, and thereupon he is entitled to be released from arrest. Rev. Stat., ch. 185, secs. 8, 9; Laws of 1843, ch. 35; Comp. Laws 477; *Kidder* v. *Farrar*, 20 N. H. 320.

Under these provisions it is as much the imperative duty of the officer making an arrest, when thereto required by the debtor, to return the prisoner before two magistrates for the purpose of having them inquire into the existence, the truth or falsity, of the alleged cause of arrest, as it is to commit him to jail if he fail to procure sufficient bail, or give the necessary jail bond; and the officer is as much bound to pay the legal and reasonable charges of the magistrates for their services in that behalf, as he is to pay the expenses of keeping and conveying his prisoner to jail, and the fees of the jailer for his commitment. The expenses incurred for the compensation of the magistrates are necessarily incident to the service of the process, whenever the debtor insists upon his right to a hearing before

* DOE, J., concurred in the views expressed in the dissenting opinion.

them; and there would be, it seems to us, just as much propriety in requiring a prisoner to defray the expense of keeping and conveying himself to jail, and of his commitment there, before his incarceration, as to compel him to pay the fees of the magistrates before his discharge from arrest. Those fees, when paid by the officer, if not required by him to be advanced or secured when he receives the process, are a legitimate item of claim by him against the plaintiff, or whoever else employed him to serve the writ or execution. If the prisoner be not discharged by the magistrates, their compensation is undoubtedly a proper subject of charge by the officer in his return of the service of the process, to be ultimately paid by the debtor. But if he be discharged, the service fails, the whole proceeding is terminated, and the plaintiff must bear the expense of an abortive attempt to enforce the collection of his debt, which the result proves to have been unjust and wrongful.

It is quite difficult for us to conceive of any thing more unjust and oppressive than to compel an upright but unfortunate debtor, who is arrested upon an unfounded allegation of dishonesty and fraud, to defray the expenses necessarily incurred to procure his liberation from the wrongful imprisonment. We can readily suppose a case where those expenses might far exceed the amount of the original indebtedness, and where it would be utterly beyond the means of the honest but persecuted victim of a revengeful or unfeeling creditor, to raise the funds wherewith to entitle himself to that discharge from unjust imprisonment, which the humanity and justice of the law, in our judgment, designed to guarantee to him. While the tendency of legislation for the last century has almost uniformly been in favor of the poor but honest debtor, and the object of nearly every law upon the subject has been to discourage and discountenance, or entirely prevent, the efforts of unfeeling creditors to oppress and punish him for his poverty, we think it would be holding out a direct

bounty to those efforts, so to construe that legislation as to compel the innocent victim of attempted persecution and oppression, to defray the entire expenses resulting from the attempt to oppress and punish him.     Beside, such a construction does not appear to us possible, consistently with the phraseology of the statute itself.   Its language is imperative, that the officer shall carry the arrested debtor, upon his requisition, before two magistrates; and equally imperative, that those magistrates, if satisfied that he has been arrested upon an unfounded charge of fraud, shall make an order for his discharge.   To hold that he is liable to pay the fees and charges of those magistrates, is in effect so to modify the statute as to require the officer to carry him before two magistrates only when he is able to pay or secure the fees and charges of those magistrates for their time and services in the examination; for it would be the merest folly to carry him before a tribunal which could only be called upon to act when paid for so doing by the arrested debtor, unless he had the money or credit necessary to enable him to secure their services.   So the statute requires the magistrates to make an order for the discharge of the arrested debtor, when satisfied that he has been unjustly arrested; but the construction which requires their fees and charges to be paid by him, substantially makes his discharge depend on his ability to pay them for their services in the premises.   In short, to require the arrested debtor, charged with concealing his property, to pay the magistrates for their services in investigating the injustice of the charge and releasing him from wrongful arrest, involves the absurdity of requiring one, whom the whole theory of the statute takes it for granted may be utterly poor and destitute, to possess sufficient means to defray the expense of litigation, often quite protracted, to establish his poverty, before he can be released from unjust imprisonment upon a false charge that he has and conceals property.   What is this, in effect, but to require the debtor

to prove he does not conceal any property, by transferring a portion, or the whole, of his concealed property to a tribunal authorized to receive it in compensation for their services in adjudging that he conceals none?

But, no argument or illustration can make clearer to our minds the injustice of such a construction of a law for the relief of poor debtors, as requires an honest poor man, falsely accused of fraud, to pay the expenses of the proceedings indispensable to free him from the consequences of that false accusation. We cannot believe the wisdom of the legislature ever contemplated a result which seems to us so entirely in conflict with every principle of equity and justice.

Upon the case stated, the plaintiff would, therefore, in our opinion, be entitled to judgment for the amount of his legal and reasonable fees for the services rendered by him as a magistrate, without regard to the result in the discharge of two of the debtors and the refusal to discharge the other. He should, however, make separate bills for the services rendered in the case of those discharged and of the one not discharged, in order to enable the defendant to make the proper return.